**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHEILA DANCY-WILKINS and SHEILA DANCY-WILKINS AS POWER OF ATTORNEY FOR FLORA MAYWEATHERS on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>  - against –<br><br>COMPU-LINK CORPORATION D/B/A CELINK, and REVERSE MORTGAGE FUNDING, LLC,<br><br>                Defendants. | Case No. 22-cv-6208 |

**<u>CLASS ACTION COMPLAINT</u>**

1

## TABLE OF CONTENTS

I. NATURE OF THE ACTION ............................................................................4

II. DECISION OF THE SECOND CIRCUIT IN RELATED ACTION.................7

III. JURISDICTION AND VENUE.....................................................................9

IV. THE PARTIES............................................................................................ 10

V. REVERSE MORTGAGE LOANS AND FEDERALLY-INSURED
HOME EQUITY CONVERSION MORTGAGES (HECMs) ............................... 12

VI. STATEMENT OF FACTS ........................................................................... 15

    A. Violations of Federal Laws and Regulations ................................ 15

        1. Imposition of Unlawful Servicing Fees ............................... 15

            (i). Violations of 24 C.F.R. §206.125(b) ........................ 15

            (ii). Violations of 24 C.F.R. §206.125(d) ........................ 16

            (iii). Violations of 24 C.F.R. §203.552 ........................... 17

            (iv). Violations of 24 C.F.R. §206.207 ........................... 18

    B. Violations of New York Laws and Regulations ............................. 18

        1. Defendants do Not Comply with the N.Y. Property Law 280 and 280-a .. 19

        2. Defendants do Not Comply with the N.Y. Property Law 280-b ................. 19

        3. Imposing Foreclosure-Related Servicing Fees Without
Providing the Pre-Property Tax Payment Notice Mandated
by 3 N.Y.C.R.R. §79.7 (formerly 3 N.Y.C.R.R. §79.9) ................... 20

    C. Breaches of HECM Loan Provisions For Charging
Inflated, False and Unreasonable Attorneys' Fees and Costs.................. 22

    D. False and Deceptive Misstatements of HECM Loan Balances .................. 23

    E. Plaintiffs' Damages and Injuries ........................................................... 23

VII.   CLASS ACTION ALLEGATIONS .................................................................. 24

VIII.   CELINK IS AN AGENT AND ATTORNEY-IN-FACT OF AND FOR RMF
AND CELINK'S OTHER LENDER AND MASTER SERVICER PRINCIPLES ......... 26

FIRST CAUSE OF ACTION
(Breach of Contract) .......................................................................................... 30

SECOND CAUSE OF ACTION
(Breach of Contract By Reason of Imposition of False,
Inflated and Unreasonable Attorney Fees / Costs) ................................................ 33

THIRD CAUSE OF ACTION
(Breach of Duties and Covenants of Good Faith and Fair Dealing) ......................... 37

FOURTH CAUSE OF ACTION
(Violations of New York General Business Law §349) ......................................... 38

FIFTH CAUSE OF ACTION
(Unjust Enrichment) ........................................................................................... 43

SIXTH CAUSE OF ACTION
(Violations of New York RPL §280-b) ................................................................. 45

X.   PRAYER FOR RELIEF ....................................................................................... 46

XI.   DEMAND FOR JURY TRIAL .......................................................................... 47

## CLASS ACTION COMPLAINT

1.      Plaintiffs Sheila Dancy-Wilkins and Sheila Dancy-Wilkins as Power of Attorney for Flora Mayweathers (collectively, "Plaintiffs"), by and through their counsel, on behalf of themselves and all others similarly situated, allege based upon personal knowledge as to Plaintiffs' own acts and observations, and upon information and belief as to all other matters based upon the investigations conducted by and through Plaintiffs' attorneys, against defendants Compu-Link Corporation d/b/a Celink ("Celink") and Reverse Mortgage Funding, LLC ("RMF") (collectively, "Defendants"), as follows:

## I.      NATURE OF THE ACTION

2.      This action arises out of injuries caused to borrowers of Home Equity Conversion Mortgages ("HECMs"), the federally-insured version of so-called "reverse-mortgage" loans, due to systemic violations by Celink and RMF of borrower protections provided by standard HECM loan agreements, federal laws and New York State laws.

3.      In particular, Celink at the direction and approval of RMF, applies numerous companywide policies and/or practices designed, intended and having the effect of adding fees, costs, charges and penalties to HECM loans serviced by RMF, and subserviced by Celink, in a manner that violates federal and state HECM borrower protection laws and regulations, and as a result, breaches standardized HECM loan agreements.

4.      RMF is a HECM loan lender, mortgagee, issuer of securities for which properties with HECM loans serve as collateral, and "master servicers."  It farms-out its servicing obligations to Celink as a contractual "subservicer."  Defendants are each directly liable to Plaintiffs and the Classes defined herein for their own violations described in this Complaint.  RMF is further liable as

having ratified and Celink's unlawful acts and for breaches of contract and violations of law by its agent, Celink.

5.      Celink is the agent of the HECM lenders, mortgagees and servicers, including but not limited to RMF, who are Celink's principals.  RMF failed to adequately supervise, detect, prevent and correct Celink's misconduct and systemic violations.  RMF is jointly and independently liable for Celink's servicing violations of Plaintiffs' and Class members' loans.

6.      RMF generally turns over all servicing functions to Celink, content to merely collect the servicing revenue from pools of HECM loans, a portion of which is paid to Celink.  In violation of their contractual, statutory and regulatory obligations as the lenders, mortgagees, issuers and master servicers, RMF turns a blind eye to Celink's systemic and multiple subservicing violations that breach standardized HECM loan agreements and violate federal and state HECM borrower protection statutes and state consumer protect statutes.

7.      The effect of Celink's systemic subservicing violations is to add unlawful and/or inflated fees, costs, charges and penalties to borrowers' HECM loan balances.  Plaintiffs' and Class members' injuries increase each month, as those inflated balances increase by the (i) the interest charged on the loan balance; and (ii) mortgage insurance charged to all HECM loans as a percentage of the loan balance.   Defendants collect and profit, or eventually will collect and profit when the property securing the home is sold or the HECM is satisfied, from those unlawful and/or inflated fees, costs, charges, penalties, additional interest and mortgage insurance charges to borrowers' HECM loans.

8.      For example, Celink routinely files foreclosure lawsuits for its principals, including RMF, without providing mandatory, pre-filing notices mandated by New York law intended to avoid

and prevent reverse mortgage foreclosure lawsuits.   Celink's systemic failure to comply with state pre-foreclosure lawsuit notice laws results in Celink adding thousands of dollars in unlawful and/or inflated fees, costs, charges, penalties, additional interest and mortgage insurance charges to borrowers' HECM loan balances, including "Attorneys Fee / Costs" that could and should have been entirely avoided.

9.      Included among those "Attorneys Fees / Costs" are false, inflated and unreasonable costs for services billed by Celink's and RMF's foreclosure law firm, Rosicki, Rosicki & Associates, P.C. ("RRA").  RRA was accused by the United States Department of Justice of billing false, inflated and unreasonable costs for services related to foreclosure lawsuits.

10.     Celink also routinely adds "Appraisal Fees" to HECM borrowers' loan balances, after declaring those loans "due and payable," even though HUD regulations provide that borrowers are not responsible for those appraisal fees.  *See* 24 C.F.R. §206.125(d).

11.     Standardized HECM loan agreements mandated by HUD contractually obligate lenders, mortgagees and servicers to comply with federal law and the state law where the properties are located.  Celink and RMF engage in deceptive practices, by routinely violating the following federal and state laws and regulations:

(a).    24 C.F.R. §206.125(b);

(b).    24 C.F.R. §206.125(d);

(c).    24 C.F.R. §203.552;

(d).    24 C.F.R. §206.207;

(e).    New York Real Property Law ("RPL") §§ 280, 280-a and 280-b; and

(f).    3 N.Y.C.R.R. §79.7 (formerly 3 N.Y.C.R.R. §79.9).

12.     Plaintiffs are co-mortgagees to a HECM loan legally-owned, assigned to and serviced by RMF and subserviced by Celink.  Plaintiffs have been and continue to be injured by Celink's and RMF's unlawful acts.

13.     Plaintiffs and other Class members are injured as a direct and proximate cause of the unlawful acts of Celink and RMF, resulting in unlawful and/or inflated fees, costs, charges, penalties, additional interest and mortgage insurance charges being added to borrowers' HECM loan balances. In Plaintiffs Dancy-Wilkins and her mother's case, those unlawful and/or inflated monies exceed $10,700.  In all cases, the injuries increase monthly as compounding interest and mortgage insurance are added to loan balances.  Plaintiffs and Class members have either already paid the unlawfully-added charges, or will be required to do so when the HECM loans are satisfied upon sale of the homes or repayment of the HECM loans.

14.     On behalf of themselves and Classes of similarly situated HECM and reverse mortgage borrowers, Plaintiffs plead the following claims against Celink and RMF

(a)     Breaches of the standard HECM Loan Agreements (Counts I & II);

(b)     Breach of Duties of Good Faith and Fair Dealing (Count III);

(c)     Violations of New York General Business Law ("GBL") §349 (Count IV);

(d)     Unjust enrichment (Count V); and

(e)     Violations of New York RPL §280-b (Count VI).

## II.     DECISION OF THE SECOND CIRCUIT IN RELATED ACTION

15.     A class action asserting similar claims as alleged by Plaintiffs in this action was filed 2018, styled *Shakespeare v. Live Well Financial, Inc., Compu-Link Corporation d/b/a Celink and Reverse Mortgage Funding, Inc.* (E.D.N.Y. Case No. 18-cv-7299) (the "*Shakespeare Action*").  In that case, Celink

filed motions to dismiss the plaintiff's claims for violations of GBL §349 and unjust enrichment under FED. R. CIV. P. 12(b)(1) and (b)(6) and RMF filed a motion to dismiss under Rule 12(b)(6). The District Count denied Celink's Rule 12(b)(1) motion, but granted Celink's and RMF's Rule 12(b)(6) motions.  Plaintiff Shakespeare appealed those orders.

16.    On appeal, the Second Circuit vacated dismissal of Plaintiff Shakespeare's claims arising under GBL §349 against Celink, holding that Plaintiff Shakespeare's original *Class Action Complaint* had stated her claim under GBL §349.  *See Shakespeare v. Compu-Link Corp. d/b/a Celink*, 848 Fed. App'x 474 (2d Cir. 2021).

17.    In reaching that decision, the Second Circuit held that the plaintiff had sufficiently pled consumer-oriented conduct to plead a GBL §349 claim.  *Id.* at 476 ("Shakespeare has also satisfied 'the threshold test in that the acts [she] complain[s] of are consumer-oriented in the sense that they potentially affect similarly situated consumers.'") (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 125 (2d Cir. 2017)).

18.    The Second Circuit further held that Plaintiff had sufficiently pled Celink's deceptive practices to plead a GBL §349 claim.  *Id.* ("[W]e conclude that the complaint raised sufficiently plausible claims under Section 349 to survive the motion to dismiss and proceed to summary judgment.").

19.    Explaining its reasoning, the Second Circuit held that the plaintiff can and did plead deceptive acts that violated GBL §349 by pleading Celink's violations of other federal and state consumer protection laws and regulations.  *Id.* ("Third, the district court additionally erred in finding Shakespeare could not have plausibly stated a Section 349 claim by alleging materially deceptive violations of notice provisions and other regulations that do not independently provide private causes

of action.  'New York courts have held that collecting fees in violation of other federal or state laws may satisfy the misleading element of §349.'  *Cohen* [*v. JP Morgan Chase & Co.*], 498 F.3d [111,] 126 [(2d Cir. 2007)].'").

20.     The Second Circuit also vacated dismissal of Plaintiff Shakespeare's claims arising under common law unjust enrichment against Celink, holding that Plaintiff Shakespeare has stated her unjust enrichment claim.  *Id.* ("We also vacate the dismissal of Shakespeare's unjust enrichment claim.").

21.     Upon remand, Plaintiff Shakespeare moved to amend her complaint, adding substantially similar breach of contract, breach of duties of good faith and fair dealing, GBL §349 and unjust enrichment claims against RMF and Celink that are pled in this action.  RMF and Celink opposed the motion to amend claiming the futility of such claims.  The Court denied that motion, finding each claim sufficiently pled and not futile.  *See* Shakespeare Action, Dkt. 175 (Sept. 30, 2022).[1]

## III.    JURISDICTION AND VENUE

22.     This Court possesses subject matter jurisdiction under 28 U.S.C. §1332(d) and the Class Action Fairness Act ("CAFA") because this is a class action in which the subject matter in controversy exceeds the sum or value of $5,000,000, there are in excess of 100 class members and members of the Class are citizens of a state different from that of Defendants.

23.     The Court has supplemental jurisdiction over Plaintiffs' and the Classes' state and common law claims pursuant to 28 U.S.C. §1367.

24.     This Court has personal jurisdiction over all Defendants.  Defendants are each

---

[1] Plaintiffs are members of various classes pled in the *Shakespeare Action*.  Based on the similarity of the claims and parties, Plaintiffs filed a motion to join their claims to the Shakespeare Action.  *See* Shakespeare Action Dkt. 16.  Celink and RMF opposed that motion and the Court denied the motion to join Plaintiffs and their claims to the Shakespeare Action.  Dkt. 175.

authorized to do business in New York, maintain continuous and systemic contacts with New York and this District, do business in New York and this District specifically related to the claims alleged in this Complaint, and has sufficient minimum contacts with New York so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District under 28 U.S.C. §1391.

## IV.     THE PARTIES

26.     Plaintiff Sheila Dancy-Wilkins is a resident and owner of a home that is the subject of this action located in Rockville Centre, New York.   Ms. Dancy-Wilkins is also the co-mortgagor of a HECM mortgage agreement legally owned, assigned to, held and serviced by RMF.   Celink is the subservicer of Plaintiffs Dancy-Wilkins' and Mayweathers' HECM and reverse mortgage loan under an agreement with RMF.   All unlawful acts alleged in this Complaint causing injury Plaintiff Dancy-Wilkins and her mother occurred during the time RMF legally owned, held and serviced, and Celink subserviced, their HECM and reverse mortgage loan and agreements.

27.     Plaintiff Sheila Dancy-Wilkins as Power of Attorney for Flora Mayweathers possesses power of attorney for her mother, Flora Mayweathers.   Ms. Mayweathers is the life estate holder, borrower and co-mortgagor of a HECM and reverse mortgage loan legally owned, assigned, held and serviced by RMF.   Celink is the subservicer of Plaintiffs Dancy-Wilkins' and Mayweathers' HECM and reverse mortgage loan under an agreement with RMF.   Ms. Mayweathers is 92 years old and suffers from dementia.   All unlawful acts alleged in this Complaint causing injury Plaintiffs Dancy-Wilkins as Power of Attorney for Flora Mayweathers occurred during the time RMF owed, held and serviced, and Celink subserviced, their HECM and reverse mortgage loan.

28.     Defendant Celink is a Michigan corporation with its principal place of business in

Lansing, Michigan.  Celink claims on its website to be the largest subservicer of reverse mortgages in the United States, and its clients include regional to nationwide lenders, banks, and insurance companies.  Celink claims to have developed and uses a proprietary Java-based reverse mortgage servicing platform, ReverseServ™, for servicing FHA HECM loans.  According to its website, "Celink's reverse mortgage subservicing portfolio currently exceeds $40 billion."  Celink claims on its website to be "licensed to service reverse mortgages in all 50 states, including [Puerto Rico] and the U.S. [Virgin Islands]," but surrendered its Mortgage Loan Servicer certificate in New York effective July 1, 2020.  Celink's Chief Executive Officer is the co-cofounder and prior Chief Operating Officer of RMF.

29.     Defendant RMF is a Delaware limited liability company with its principal place of business in New Jersey and with offices in New York within this District.  RMF is a lender, mortgagee, holder, issuer and servicer of HECM loans in New York and throughout the United States, claiming on its website to be, "one of the nation's leading reverse mortgage lenders."  RMF is registered in the State of New York as an Exempt Mortgage Servicer, because it uses a third party to subservice all of the loans to which it owns servicing rights in its portfolio.  RMF is liable for the unlawful acts alleged in this Complaint based upon (i) its directly unlawful conduct as lender, mortgagee, holder, issuer and servicer of HECM and reverse mortgage loans; (ii) as having knowingly ratified Celink's unlawful acts; and (iii) as the principal of Celink who has engaged in the unlawful acts alleged in this Complaint.

30.     RMF acquired the HECM mortgage agreement for the HECM owed by Plaintiffs in 2017 and as a result, is the master servicer, legal owner and holder of that loan and HECM mortgage agreement.  RMF subsequently took formal assignment of that HECM mortgage agreement in June

2017 from Mortgage Electronic Registration Systems, Inc. as nominee for Nationwide Equities Corporation.

## V.   REVERSE MORTGAGE LOANS AND FEDERALLY-INSURED HOME EQUITY CONVERSION MORTGAGES (HECMs)

31.     A reverse mortgage loan is a home loan that requires no monthly mortgage payments. In New York, borrowers age 60-70 are entitled to the protections afforded under New York Real Property Law ("RPL") §280, while borrowers over age 70 are protected under New York RPL §280-a.  All reverse mortgages and borrowers are protected by New York RPL §280-b.

32.     Home Equity Conversion Mortgages (HECMs) are a specific type of reverse mortgage loan authorized by Congress under the National Housing Act, pursuant to the Housing and Community Development Act of 1987.  The HECM insurance program is administered and regulated by the United States Department of Housing and Urban Development ("HUD"), through the Federal Housing Administration. Congress created the HECM federal-insurance program to ensure that elderly homeowners would be able to access the financial resources stored in their home's equity without having to sell the home.  The HECM insurance program was authorized to insure HECM lenders against the risk that the loan balance could exceed the property value upon the death of the last surviving borrower.  It further requires that insured lenders satisfy all federal and state law requirements to protect the borrowers from certain unfair, deceptive, or predatory lending practices.

33.     HECM loans were developed and authorized by Congress to enable seniors to convert the equity in their homes to cash to help them meet their monthly expenses and protect them from losing their homes.  According to a website maintained by HUD, "The Home Equity Conversion Mortgage (HECM) is Federal Housing Administration's (FHA) reverse mortgage program which enables you to withdraw some of the equity in your home.  You choose how you

want to withdraw your funds, whether in a fixed monthly amount or a line of credit or a combination of both." Source:  https://www.benefits.gov/benefits/benefit-details/709.

34.     According to the United States Government Accountability Office ("GAO"), "While HECMs have the potential to play a key role in meeting the needs of seniors facing financial hardship or seeking to improve their quality of life, the product is relatively complex and costly and the population it serves is vulnerable."  GAO, Testimony Before the U.S. Senate, Special Committee on Aging, *Reverse Mortgages[,] Product Complexity and Consumer Protection Issues Underscore Need for Improved Controls over Counseling for Borrowers* (June 29, 2009) (Statement of Matthew J. Scire, Director of Financial Markets and Community Investment).

35.     The HECM agreements between a HECM lender / mortgagee and a borrower / mortgagor generally consists of a standardized note, a standardized reverse mortgage or deed of trust, a standardized second reverse mortgage (naming HUD as the mortgagor) and a standardized conversion loan agreement, each of which have standard terms that lenders are required by HUD to use.   Those "model" agreements are available on the HUD website.  *See* https://www.hud.gov/program_offices/housing/sfh/model_documents.  Those HECM loan agreements must conform to and comply with the National Housing Act and federal regulations promulgated by HUD and FHA, and the state laws in which the properties are located.

36.     In New York, HECM loans are authorized by New York RPL §§ 280 and 280-a and New York Banking Law §6-h.   RPL §280-b mandates that all HECM lenders, servicers and subservicers comply with all HUD HECM rules and regulations, and violations entitle HECM mortgagees and any other injured person to file an express private of action.

37.     Many HECM loans are securitized and sold to investors pursuant to the Government

National Mortgage Association ("Ginnie Mae") Mortgage-Backed Securities ("MBS") Program for HECM loans.

38.     Under the Ginnie Mae MBS Program, investors purchase "participations" in HECM securities issued by approved lenders, with each participation representing a *pro-rata* share of interest and principal in the accrued balance of a HECM loan pool.  *See* HUD Handbook 5500.3 Rev. 1, Chpt. 35-1.  The sponsoring HECM lender is the Issuer of the pool and generally remains the servicer and legal (but not beneficial) owner of the securitized pool of HECM loans.

39.     A Ginnie Mae Issuer of MBS securities is subject to obligations set forth in the Ginnie Mae Mortgage-Backed Securities Guide, HUD Handbook 5500.3, Rev. 1.  *See* 24 C.F.R. §320.1 ("All such [modified pass-through securities] transactions are governed by the specific terms and provisions of the Association's Mortgage-Backed Securities Guides (MBS Guides) and contracts entered into by the parties.").

40.     Issuers must comply with both Ginnie Mae and HUD requirements, including those rules concerning the obligations of issuers, successors, and transferees.  *See* Ginnie Mae, 5500.3, Rev. 1, Chapter 4.  Issuers must also comply with rules concerning subservicers.  For instance, they can only contract with a Ginnie Mae-approved subcontractor.  *See* Ginnie Mae, 5500.3, Rev. 1, Chapter 4, 4-3.  They can also subcontract, some, but not all, of their servicing functions.  *See Id.* at 4-1, 4-3. The master servicer will remain responsible for the performance of any servicing functions that it delegates to its subservicer.  *Id.* at 4-2(B).

41.     Regardless of whether the servicing functions are delegated, the servicer of a loan securitized under the Ginnie Mae MBS Program remains fully responsible for all servicing obligations.  *See* Ginnie Mae MBS Guide, Handbook 5500.3, Rev. 1, Ch. 4, §4-1 ("The Issuer is fully

responsible for the administration of the securities and the servicing of the pooled mortgages.").

## VI.   STATEMENT OF FACTS

### A.   VIOLATIONS OF FEDERAL LAWS AND REGULATIONS

42.   The standard HUD-mandated HECM loan agreements mandate that lenders, mortgagees and servicers comply with federal law and the law in the State where the property is located, here New York.

43.   Plaintiff Dancy-Wilkins' and her mother's standardized *Fixed Rate Home Equity Conversion Mortgage* agreement (the "*Reverse Mortgage Agreement*") states at Section 17,

> **Governing Law; Severability**.  *This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.*  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

(Emphasis added).

44.   The same contractual obligation to comply with federal law and New York law is contained in the standardized *Home Equity Conversion Loan Agreement* (the "*Conversion Loan Agreement*").

### (1).   Imposition of Unlawful Servicing Fees

45.   Celink and RMF breached Plaintiffs' and Class members' loan agreements and engaged in deceptive practices due to their violations of (i) 24 C.F.R. §206.125(b); (ii) 24 C.F.R. §206.125(d); (iii) 24 C.F.R. §203.552; and (iv) 24 C.F.R. §206.207.

### (i).   Violations of 24 C.F.R. §206.125(b)

46.   Celink and RMF engaged in deceptive practices due to their violations of 24 C.F.R. §206.125(b), which states:  "*If the mortgage is due and payable, the appraisal shall be at the mortgagee's expense* but the mortgagee shall have a right to be reimbursed out of the proceeds of any sale by the borrower

or other permissible party." (Emphasis added).

47.     On one occasion, Celink and RMF declared Plaintiff Dancy-Wilkins' and her mother's HECM loan due and payable. After that occasion, in violation of 24 C.F.R. §206.125(b), and therefore in breach of their HECM loan agreements, Celink and RMF added an "appraisal fee" of $335 to Ms. Dancy-Wilkins' and her mother's loan balance. As confirmed by the monthly loan statements, Celink and RMF unlawfully added that appraisal fee on June 20, 2017. In every monthly statement thereafter continuing to the present, RMF and Celink falsely and deceptively listed the amount of Plaintiff Dancy-Wilkins' and her mother's HECM as containing the unlawful appraisal fee, plus additional interest and mortgage insurance premiums based upon that fee.

**(ii).    Violations of 24 C.F.R. §206.125(d)**

48.     Celink and RMF engaged in deceptive practices due to their violations of 24 C.F.R §206.125(d), which prohibits the filing of any state foreclosure lawsuit *until after* the mortgagee, servicer and servicing agent comply with all State law requirements for filing a foreclosure lawsuit.

49.     Celink and RMF commenced a foreclosure lawsuit against Plaintiff Dancy-Wilkins and her mother in the New York State Supreme Court located in Nassau County. The foreclosure action was filed by Celink for RMF in violation of the pre-filing notice requirements mandated by New York RPL §280-(2)(f) and §280-a(2)(m) and the pre-filing notice and substantive requirements mandated by 3 N.Y.C.R.R. §79.9 (subsequently re-codified in 3 N.Y.C.R.R. §79.7(a), (b) and (c)). As a result, all fees, costs, charges, penalties, interest and mortgage insurance added to Plaintiff Dancy-Wilkins and her mother's HECM loan by Celink and RMF, were added in violation of 24 C.F.R §206.125(d). In every monthly statement thereafter continuing to the present, RMF and Celink falsely and deceptively listed the amount of Plaintiff Dancy-Wilkins' and her mother's HECM as containing

those fees, costs, charges, penalties, additional interest and mortgage insurance premiums based upon those fees, costs charges and penalties.

50.     Upon information and belief, Celink and RMF did not provide pre-filing notice to the Office of the Aging prior to filing either their foreclosure lawsuit against Plaintiff Dancy-Wilkins and her mother.

**(iii).     <u>Violations of 24 C.F.R. §203.552</u>**

51.     Celink and RMF breached Plaintiffs' and Class members' loan agreements and engaged in deceptive practices due to their violations of HUD regulation 24 C.F.R. §203.552, which prohibits charging borrowers any fee not authorized by HUD, and specifically prohibits any "[a]ttorney's and trustee's fees and expenses" that are not "actually incurred" and "[c]harges for servicing activities of the mortgagee or servicer;"   24 C.F.R.§§ 203.552(a)(9), (a)(12)(i), (a)(13). Further, §203.552(b) requires any fee imposed by the loan servicer or its agent to "be predicated upon *the actual cost of the work performed* including out of pocket expenses." (emphasis added).

52.     Celink and RMF violated 24 C.F.R. §203.552, and therefore breached their loan agreements with Plaintiff Dancy-Wilkins and her mother, by adding inflated attorneys' fees and/or costs to Plaintiff Dancy-Wilkins' and her mother's HECM above the actual costs of services incurred by the attorneys hired by Celink for RMF to sue Plaintiff Dancy-Wilkins and her mother in foreclosure.  As further pled in Count II below, Celink and RMF unlawfully passed along those inflated fees and costs to Plaintiff Dancy-Wilkins and her mother. In every monthly statement sent after the filing of the first foreclosure, Celink falsely and deceptively listed the amount of Plaintiff – Wilkins' and her mother's HECM as containing the inflated attorneys' fees and costs, additional interest and mortgage insurance premiums based upon those fees and costs.  In every monthly

statement since RMF and Celink filed the foreclosure against Plaintiff Dancy-Wilkins and her mother, continuing to the present, Celink and RMF falsely and deceptively listed the amount of Plaintiff Dancy-Wilkins' and her mother's HECM as containing those fees and costs, plus additional interest and mortgage insurance premiums based upon those fees and costs.

**(iv).** **Violations of 24 C.F.R. §206.207**

53.     Celink and RMF breached Plaintiffs' and Class members' loan agreements and engaged in deceptive practices due to their violations of 24 C.F.R. §206.207, which prohibits the addition of unlawful and improper charges and fees to HECM borrowers' loan balances.  Celink and RMF violated 24 C.F.R. §206.207 by adding charges and fees to Plaintiffs' and Class members' loans related to their unlawful assessment of appraisal and inspection fees, unlawful filing, preparation and maintenance of foreclosure lawsuits without complying with pre-filing notice requirements and the imposition of attorneys' fees and costs containing false, inflated and unreasonable costs.

54.     For Plaintiff Dancy-Wilkins and her mother, the unlawful fees, costs and charges added to their HECM loan balance in violation of 24 C.F.R. §206.207 exceed $10,700.00, and continue to increase due to interest and inflated mortgage insurance charges.  In every monthly statement continuing to the present, RMF and Celink falsely and deceptively listed the amount of Plaintiff Dancy-Wilkins' and her mother's HECM as containing the unlawful fees, costs and charges.

**B.**     **VIOLATIONS OF NEW YORK LAWS AND REGULATIONS**

55.     Section 17 of standard HECM *Reverse Mortgage Agreement* (quoted above) and standard *Conversion Loan Agreement* mandate that lenders, mortgagees and servicers comply with the law in the State where the property is located, here New York.

**(1).**    **Defendants Did Not Comply with New York RPL §§ 280 and 280-a**

56.    Celink and RMF violated New York RPL §280(2)(f) and RPL §280-a(2)(m).  Both

statutes provide:

> [I]n the event that an authorized lender or holder of the reverse mortgage loan intends
> to initiate foreclosure proceedings the mortgagor shall have the right to designate a
> third party who shall be notified.  In the event that the mortgagor has not designated
> a third party to receive such notice of foreclosure, then the authorized lender or the
> holder of said reverse mortgage loan *shall notify* the local or county office for the aging
> of its intent to commence foreclosure proceedings.  Such entity *shall take* appropriate
> action to protect the interests of the mortgagor;

(Emphasis added).  New York RPL §280 protects reverse mortgage borrowers sixty years of age or

older, while New York RPL §280-a protects reverse mortgage borrowers seventy years of age or

older.

57.    Celink and RMF commenced a foreclosure lawsuit against Plaintiff Dancy-Wilkins

and her mother in the New York State Supreme Court located in Nassau County.  The foreclosure

action was filed in violation of the pre-filing notice requirements mandated by New York RPL §280-

(2)(f) and §280-a(2)(m).  As a result, all fees, costs, charges, penalties, interest and mortgage insurance

added to Plaintiff Dancy-Wilkins' and her mother's HECM loan by Celink and RMF, were added in

violation of New York RPL §280(2)(f) and §280-a(2)(m).  In every monthly statement thereafter,

RMF and Celink falsely and deceptively listed the amount of Plaintiff Dancy-Wilkins' and her

mother's HECM as containing those fees, costs, charges, penalties, additional interest and mortgage

insurance premiums based upon those fees, costs charges and penalties.

**(2).**    **Defendants Violate New York RPL §280-b**

58.    RPL §280-b mandates that all HECM lenders, servicers and servicers comply with

HUD's rules and regulations:

> Reverse mortgages secured by residential real property within the state shall be subject to the rules and regulations of the federal Department of Housing and Urban Development relating to the home equity conversion mortgage program.

RPL §280-b(4)(a).

59. Violations of any HUD rule and regulation pertaining to a HECM loan entitles any injured person to commence and private right of action. RPL §280-b(8).

60. Plaintiffs and New York Subclass members have been injured and continue to be injured by RMF's and Celink's violations of HUD's rules and regulations, as pled in this Complaint, including (i) 24 C.F.R. §206.125(b); (ii) 24 C.F.R. §206.125(d); (iii) 24 C.F.R. §203.552; and (iv) 24 C.F.R. §206.207.

**(3). Imposing Foreclosure-Related Servicing Fees Without Providing the Pre-Property Tax Payment Notice Mandated by 3 N.Y.C.R.R. §79.7 (formerly  3 N.Y.C.R.R. §79.9)**

61. Celink and RMF engaged in deceptive practices due to their failure to comply with 3 N.Y.C.R.R. §79.9 and its successor regulation.  3 N.Y.C.R.R. §79.9 (subsequently re-codified in 3 N.Y.C.R.R. §79.7(a), (b) and (c)) provided in relevant part:

> (a) [NY RPL §§] 280 and 280-a loans may be terminated by the lender *solely* in the event of any of the following:  …

> (5) the mortgagor(s) fails to pay real estate taxes or maintain all insurance required pursuant to the security agreement.

> (i) If the mortgagor(s) fails to pay taxes or maintain all required insurance, then the lender *must* within 10 business days of learning of such event, give written notice of such failure to the mortgagor(s) and the third-party, if any, designated by the mortgagor(s) to receive notice of any event that could lead to termination. The lender must give the mortgagor(s) 30 calendar days to cure such failure. In addition, the notice to the mortgagor(s) and the third party must advise the mortgagor(s) of his or her right to cure.

> (ii) The failure to pay taxes or maintain all required insurance *shall not* be construed to be a termination event *unless* the lender has complied with the provisions set forth in

subparagraph (i) of this paragraph.

3 N.Y.C.R.R. §79.9(a)(5) (Emphasis added).

62.     The New York Attorney General agrees that notice must be provided *before* a reverse mortgage lender, mortgagee or servicer pays a borrower's property taxes, as stated in a settlement with another reverse mortgage lender, mortgagee and servicer.  *See In re Nationstar Mortgage LLC d/b/a Champion Mortgage*, *Assurance of Discontinuance* (Mar. 1, 2021) ("11.  …  Champion's payment of taxes without adequate notice also may have resulted in some borrowers' inability to make other arrangements or to avoid the costs (or risk of default) associated with tax payments made by their loan servicer.  12.  By virtue of the facts described above, the OAG finds that certain of Champion's communications and actions were deceptive and unlawful.  …  20.  Champion shall provide notification to borrowers prior to paying property taxes on their behalf.

63.     The foreclosure lawsuit filed by Celink and RMF against Plaintiff Dancy-Wilkins and her mother in August 2017 alleged default due to a claimed failure of Plaintiff Dancy-Wilkins and her mother to pay or refund property taxes.  That foreclosure lawsuit was filed without having provided the pre-payment notice and right to cure required by 3 N.Y.C.R.R. §79.9(a)(5).  In particular, a February 1, 2017 letter sent by RMF and/or Celink (on RMF's letterhead) to Ms. Mayweathers did not contain the right to cure language required by the New York regulations. As a result, all fees, costs, charges, penalties, interest and mortgage insurance added to Plaintiff Dancy-Wilkins' and her mother's HECM loan as a result of that foreclosure lawsuit constitutes injury to Plaintiff Dancy-Wilkins' and her mother's for Celink's and RMF's breach of contract.  Those unlawful fees, costs, charges, penalties, interest and mortgage insurance are added to the amount of Plaintiffs' HECM loan in each monthly statement sent by RMF and Celink to Plaintiffs, continuing to the present.

C.   **BREACHES OF HECM LOAN PROVISIONS FOR CHARGING INFLATED, FALSE AND UNREASONABLE "ATTORNEYS FEES / COSTS"**

64.     As pled above and in Count II below, Celink and RMF charged Plaintiffs and Class Members for inflated, false and therefore unreasonable attorneys' fees and costs.  Celink billed those false, inflated and unreasonable fees and costs based upon services claimed to be performed by RRA, who was accused by the United States Department of Justice of billing for billing inflated, false and unreasonable costs related to foreclosure lawsuits.  RRA paid $4.6 million to resolve those claims.

65.     Section 8 of the standard *Reverse Mortgage Agreement* prohibits the Lender from charging any fee not authorized by HUD.  HUD makes it unlawful to charge any unreasonable fee, and in particular attorneys' fees and/or costs about the actual cost.  24 C.F.R. §203.552.  By passing along the false and inflated attorneys' fees and costs, listed as "Payment for Attorneys Fees / Costs" in Plaintiffs' and Class members' monthly statements, Celink and RMF breached Section 8 of the standard *Reverse Mortgage Agreement.*

66.     Celink and RMF charged Plaintiffs and Class Members for allegedly false and inflated attorneys' fees and costs billed to them by RRA.  Section 20 of the standard *Reverse Mortgage Agreement* prohibits the Lender from charging HECM borrowers "costs" above actual cost or any "[un]reasonable attorneys' fees[.]"  By passing along the false and inflated attorneys" fees and costs, listed as "Payment for Attorneys Fees / Costs" on Plaintiffs' and Class members' monthly statements, Celink and RMF breached Section 20 of the standard *Reverse Mortgage Agreement.*

67.     Celink and RMF breached Sections 8 and 20 of the standard *Reverse Mortgage Agreement* by adding inflated, false and unreasonable "Attorneys Fees / Costs" to Plaintiffs' and Class members' HECM loan balances.  Plaintiffs and Class members have been damaged in those amounts, plus the additional interest and mortgage insurance premiums added as a result of the false, inflated and

unreasonable fees and costs.

**D.    FALSE AND DECEPTIVE MISSTATEMENTS OF HECM LOAN BALANCES**

68.    Since RMF acquired Plaintiff Dancy-Wilkins' and her mother's HECM loan in 2017 and continuing through the present, Celink and RMF sent Plaintiff Dancy-Wilkins and/or her mother statements each month continuing to deceptively misstate the amount owed on their HECM loan, due to the addition of unlawful fees, charges, costs, penalties, interest and mortgage insurance.  Those deceptive statements were and are sent on RMF's letterhead.

**E.    PLAINTIFFS' DAMAGES AND INJURY**

69.    Plaintiff Dancy-Wilkins and her mother have been damaged and injured as a direct and proximate result of the unlawful acts, policies and practices of Celink and RMF pled in this Complaint.  Between June 5, 2017 and July 24, 2019, Celink as the subservicer for RMF added $10,783.99 to Plaintiff Dancy-Wilkins' and her mother's HECM loan balance in fees, costs, charges and penalties related to the unlawful conduct alleged in this Complaint.  Those fees, costs, charges and penalties are listed on her monthly statements such as "Payment for Property Inspection," "Payment for Property Appraisal," "Payment for Attorney Fees / Costs" and "Payment for Property Preservation."  All, or a substantial portion, of those fees, costs, and charges, are improper based on the breaches of contract, breaches of implied contractual covenants, and unlawful acts, practices, and conduct alleged in this Complaint.

70.    In addition, Celink and RMF have charged, *and continue to charge*, compounding interest at an annual rate of 5.06% to Plaintiff Dancy-Wilkins' and her mother's HECM loan balance that includes based the improper and unlawful fees, costs, charges and penalties added to the principal of Plaintiff Dancy-Wilkins' and her mother's HECM loan.

71.     In addition, Celink and RMF have charged, *and continue to charge*, increased Mortgage Insurance Premiums at an annual rate of 1.25% based on a loan balance that includes the improper and unlawful fees, costs, charges and penalties added to the principal of Plaintiff Dancy-Wilkins' and her mother's HECM loan.

72.     The unlawful fees, costs, charges and penalties added to Plaintiffs' HECM loan, and all Class members loans, are listed as debts that are owed and will be repaid upon sale of the homes securing the HECMs or satisfaction of the HECM loans.  When the homes are sold, the unlawful fees, costs, charges and penalties added by Defendants will be deducted from the sale proceeds payable to Plaintiffs (and Class members) or their heirs.

## VII.    CLASS ACTION ALLEGATIONS

73.     Plaintiffs bring this action pursuant to FED. R. CIV. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of themselves individually and the Classes defined as follows:

(a).     The Servicing Fees Class.  All borrowers, and heirs and estates of borrowers, who had a HECM or reverse mortgage loan serviced or subserviced by Celink or RMF since December 21, 2012 and whose loans were charged or assessed fees, costs, charges, penalties, interest or mortgage insurance premiums related to addition of the following service fees to loan balances:  (i) appraisal fees after loans were deemed due and payable; (ii) all foreclosure related fees after Celink failed to provide state-required pre-foreclosure filing notices; (iii) all inflated or false attorneys' fees or costs.

(b).     The New York Subclass.  All members of the Servicing Fees Class whose homes securing the HECM or reverse mortgage loans were located in New York.

74.     Excluded from the Servicing Fee Class and the New York Subclass (collectively, the "Classes") are Defendants and their parent(s), subsidiary(ies), officers, directors, employees, partners and co-venturers.  Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff assigned to this action.

75.     Upon information and belief, the Classes each contain thousands of individuals whose identities can be readily ascertained from Defendants' books and records.  Plaintiffs do not know the exact size or identities of the proposed classes, since such information is in the exclusive control of Defendant.

76.     Common questions of law and fact raised in this action on behalf of the Classes include the following:

(a)     Whether Defendants' addition of appraisal fees to HECMs declared due and payable violated federal law;

(b)     Whether Defendants failed to provide timely notice to Class members and the New York Department of Aging before filing foreclosure lawsuits in New York;

(c)     Whether Defendants filed foreclosure lawsuits in violation of New York law;

(d)     Whether Defendants added false, inflated or unreasonable attorneys' fees and costs to Class members' loan balances;

(e)     The amounts in which Class members were damaged by Defendants' unlawful and inequitable acts, practices and conduct; and

(f)     Whether the Class members are entitled to restitution, disgorgement, a constructive trust, declaratory relief and/or injunctive relief.

77.     Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs retained able counsel with extensive experience in consumer and borrower class action litigation.  The interests of Plaintiffs are coincident with, and not antagonistic to, the interests of the other Class members.

78.     The questions of law and fact common to the members of the Classes predominate

over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

79.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual Class members.

80.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members to individually redress the wrongs done to them.  The Classes are readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation.  The Court will encounter no difficulty in managing this action as a class action.

## VIII.   CELINK IS AN AGENT AND ATTORNEY-IN-FACT OF AND FOR RMF AND CELINK'S OTHER LENDER AND MASTER SERVICER PRINCIPLES

81.     Celink admitted in the *Shakespeare Action* that RMF ceded "day-to-day servicing functions" over their HECM loan portfolios to Celink.  *Shakespeare Action* Dkt. 98 at 2, n.3.

82.     Celink was, is and remains the express, implied and apparent agent of RMF for Plaintiffs and Class members' HECM loans, including Plaintiff Dancy-Wilkins' and her mother's HECM loan.  Celink was designated by RMF to perform RMF's obligations under those HECM and reverse mortgage agreements.  Celink was and is in privity, or near privity, with Plaintiffs and Class members such at it is liable for breach of contract.

83.     RMF filed a declaration in the *Shakespeare Action* admitting that Celink is responsible to perform RMF's servicing obligations under Plaintiff Shakespeare's and Class members' HECM and reverse mortgage loans.  *Shakespeare Action* Dkt. 82-8, ¶7 ("Celink remits payments to, from, or on behalf of, Plaintiff, is responsible for certain foreclosure services, and provides the personnel to

perform such services in compliance with applicable law and guides."); *Shakespeare Action* Dkt. 82-8, ¶8 ("Celink is also responsible for maintaining accurate records and reports concerning Plaintiff's [Shakespeare's] Loan, including accurate records of payments received, collected, or remitted. Likewise, Celink is responsible for communicating with Plaintiff regarding her account."); *Shakespeare Action* Dkt. 82-8, ¶9 ("Celink also provides the systems necessary to service Plaintiff s Loan, including its proprietary computer software, ReverseServTM.").

84.     RMF also admitted in the *Shakespeare Action* that it delegated to Celink the decision to impose all the allegedly unlawful fees, costs, charges, penalties, interest and mortgage insurance assessments challenged in this lawsuit. *Shakespeare Action* Dkt. 82-8, ¶10 ("Celink fulfills all servicing and administrative functions with respect to Plaintiffs Loan, and maintains all related servicing records, which includes maintaining (and potentially modifying) electronic records concerning fees, costs, charges, interest and insurance premiums that have been assessed, or are due and owing.").

85.     In the *Reverse Mortgage Servicing Agreement*, dated October 19, 2012, between RMF and Celink, RMF granted Celink powers sufficient to be RMF's agent to perform all RMF's obligations deriving from HECM borrowers' loan agreements. Those express powers granted by RMF to Celink were contained in subsequent servicing agreements between RMF and Celink.

86.     Among the many powers conferred by RMF to Celink in their *Reverse Mortgage Servicing Agreement*, "Celink agrees to commence foreclosure actions requested by RMF that meet RMF's, or any other Investor's or Insurer's servicing guidelines."

87.     That same *Reverse Mortgage Servicing Agreement* expressly identifies Celink as RMF's agent:  "All documents and instruments held in the custody of ***Celink*** (***as agent for RMF***) shall be held by Celink for the benefit of, and as agent for, RMF as the legal owner thereof."  (Emphasis

added).

88.    Through May 2021, Celink's Chief Executive Officer and Chairman was a co-founder and the former Chief Operating Officer of RMF.   He remains the Chairman of Celink.

89.    In foreclosure lawsuits filed in the name of RMF in the New York State courts, Celink has filed affidavits asserting that RMF has designated Celink as its "attorney-in-fact" concerning the HECM and reverse mortgage loans owned, held and/or serviced by RMF.   Included among such affidavits is an *Affidavit of Merit and Amounts Due* filed on December 12, 2017 in the foreclosure lawsuit styled *Reverse Mortgage Funding LLC v. Flora D. Mayweathers, Sheila Dancy-Wilkins, et al.*, wherein the Celink affiant, a Celink Assistant Vice President, states under penalty of perjury that "Celink [is the] Attorney in Fact for REVERSE MORTGAGE FUNDING LLC, the plaintiff herein, …."

90.    In foreclosure lawsuits filed in the name of RMF in the New York State courts, Celink is identified as RMF's "Power of Attorney" and "Attorneys-in-Fact" pursuant to a *Subservicing Agreement* dated November 30, 2016.   That Power of Attorney identifies RMF as Celink's "Principal" and expressly confers rights to Celink as RMF's agent.

91.    As RMF's agent, attorney-in-fact and power of attorney, Celink retains the law firm(s) that file HECM loan foreclosure lawsuits in RMF's name in the New York State courts.   Further, Celink is identified in court records as RMF's "Foreclosure Manager," approving the substitution of law firms representing RMF in foreclosure lawsuits.

## IX.    RMF HAS RATIFIED CELINK'S UNLAWFUL ACTS

92.    RMF is the legal owner, holder and master servicer of Plaintiff Dancy-Wilkins' and her mother's HECM loan, having taken formal assignment of that HECM mortgage agreement from the prior lender, mortgagee and servicer.

93.     RMF is directly liable for all unlawful acts and practices pled in this Complaint since acquiring Plaintiffs' HECM loan.

94.     In addition, RMF is liable as the principal to its agent and subservicer Celink for the unlawful acts, practices and liabilities of Celink pled in this Complaint.  RMF has ratified Celink's unlawful actions alleged in this Complaint.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

### (AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS AND THE CLASSES)

95.     Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

96.     Celink and RMF breached Plaintiffs' and the Class members' HECM and reverse mortgage loan agreements, including the standard HECM *Conversion Loan Agreement and* Sections 6 and 8 of the standard HECM *Reverse Mortgage Agreement*.

97.     Plaintiffs and Class members are the borrowers or representatives of borrowers to HECM loan agreements.  Those HECM loan agreements are uniform and standardized instruments that include a *Conversion Loan Agreement* and *Reverse Mortgage Agreement*.

98.     Celink and RMF are or were obligated to comply with the terms of those loan agreements as the lender, mortgagee, servicer, subservicer, agent of the lender, mortgagee or servicer, assignee, successor to the lender, mortgagee or servicer or attorney-in-fact.

99.     Celink and RMF are or were in privity, or near privity, with Plaintiffs and Class members concerning the performance of obligations under the loan agreements.

100.    Celink and RMF breached the provision in the standard *Conversion Loan Agreements* providing that "Interest shall be calculated as provided in the Loan Documents" by charging interest on HECM loan balances inflated by the unlawful fees, costs, charges and penalties pled in this Complaint.

101.    Celink and RMF breached Section 6 of the standard *Reverse Mortgage Agreement* with Plaintiffs and Class members by charging for appraisals and/or inspections without complying the preconditions set forth in Section 6 for imposing such appraisal and/or inspection fees.

30

102.    Celink and RMF breached Section 8 of the standard *Reverse Mortgage Agreement* with Plaintiffs and Class members by charging fees and charges that have not been authorized by the Secretary of HUD.

103.    Plaintiffs and Class members have been injured and damaged as a direct and proximate result of Celink's and RMF's breaches of Plaintiffs' and Class members' HECM and reverse mortgage loan agreements.

104.    As a direct result Celink's and RMF's breaches of contract, Defendants imposed and/or collected fees, costs, charges, penalties, inflated interest and inflated mortgage insurance that have been added to the principal of Plaintiffs' and Class members' HECM and reverse mortgage loans, paid from the retained equity in their homes, or paid by Plaintiffs and Class members (or their estates), thereby causing actual harm and financial injury and damage to Plaintiffs and all Subclass members.

105.    To remedy Celink's and RMF's breaches of contract, Plaintiffs and the Classes seek damages, equitable remedies including an injunction and all other appropriate remedies.

106.    As it pertains to Plaintiff Dancy-Wilkins and Plaintiff Dancy-Wilkins as Power of Attorney for Flora Mayweathers individually, Celink and RMF breached the standard *Conversion Loan Agreement* and Sections 6 and 8 of their *Reverse Mortgage Agreement*.  Plaintiff Dancy-Wilkins and Plaintiff Dancy-Wilkins as Power of Attorney for Flora Mayweathers have been injured and damaged as a direct and proximate result of Celink's and RMF's breaches of contract, in an amount exceeding $10,700 by reason of the unlawful fees, costs, charges, penalties, additional interest and additional mortgage insurance added to the balance of her HECM and reverse mortgage, which injuries are continuing and increasing by reason of the addition of further inflated interest and mortgage

insurance assessments.  Plaintiff Dancy-Wilkins and her mother were at all relevant times in compliance with and not in breach of their HECM loan agreements, or alternatively, Defendants elected their remedy to continue to perform under those loan agreements even after asserting a breach by Plaintiff Dancy-Wilkins and/or her mother.

## SECOND CAUSE OF ACTION

### BREACH OF CONTRACT BY REASON OF IMPOSITION OF FALSE, INFLATED AND UNREASONABLE ATTORNEY FEES / COSTS

### (AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS AND QUALIFYING MEMBERS OF THE NEW YORK SUBCLASS)

107.    Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

108.    Apart from the breaches of standard HECM loan agreements set forth in Count I, the imposition of false, inflated and unreasonable attorneys' fees and costs by Celink and RMF breached Plaintiffs' and the Class members' HECM and reverse mortgage loan agreements, including the standard HECM *Conversion Loan Agreement and* Sections 8 and 20 of the standard HECM *Reverse Mortgage Agreement*.

109.    Plaintiffs and New York Subclass members are the borrowers or representatives of borrowers to HECM and reverse mortgage loan agreements.  Those loan agreements are uniform and standardized instruments that include a *Conversion Loan Agreement* and *Reverse Mortgage Agreement*.

110.    Celink and RMF are or were obligated to comply with the terms of those loan agreements as the lender, mortgagee, servicer, subservicer, agent of the lender, mortgagee or servicer, assignee, successor to the lender, mortgagee or servicer or attorney-in-fact.

111.    Celink and RMF are or were in privity, or near privity, with Plaintiffs and New York Subclass members concerning the performance of obligations under the loan agreements.

112.    Celink and/or RMF retained the law firm Rosicki, Rosicki & Associates, P.C. (again, "RRA") to sue Plaintiffs and New York Subclass members.

113.    RRA or its principals wholly-own or owned the companies Enterprise Process Service, Inc., Paramount Land, Inc. and Threshold Land, Inc.

33

114.     RRA or its principals used those wholly-owned companies to perform foreclosure and title services, and then billed those services to Celink and/or RMF.  Celink in turn added the full cost of those RRA billings to Plaintiffs' and New York Subclass members' HECM and reverse mortgage loan balances under the catch-all term "Payment for Attorney Fees / Costs."

115.     On March 27, 2018, the United States of America filed a civil lawsuit against RRA in the United States District Court for the Southern District of New York, asserting that RRA participated in a "scheme to generate expenses for foreclosure-related services that were falsely and fraudulently inflated with knowledge that those expenses would be passed on to, and paid by, the Federal National Mortgage Association ('Fannie Mae')."

116.     "The complaints allege that Rosicki improperly passed off foreclosure expenses submitted by their affiliates as the actual and reasonable costs of the services performed, thereby masking enormous mark-ups applied by the affiliates."  *United States ex rel. Grubea v. Rosicki, Rosicki & Assoc., P.C.*, 318 F. Supp. 3d 680, 700 (S.D.N.Y. 2018) (denying RRA motion to dismiss).

117.     Plaintiffs' standardized loan agreements, including the provision of the *Conversion Loan Agreement* providing that, "Borrower shall pay to Lender reasonable and customary charges and fees as permitted under 24 CPR 206.207(a).  Celink and RMF were prohibited adding unreasonable fees or charges, including fees and charges not permitted by 24 C.F.R. §206.207 and 24 C.F.R. §203.552, to the balance of Plaintiffs' and New York Subclass members' HECM and reverse mortgage loans.

118.     Celink and RMF breached Section 8 of the standard *Reverse Mortgage Agreement* with Plaintiffs and Class members by charging fees and charges that have not been authorized by the Secretary of HUD.

119.     Section 20 of Plaintiffs' and New York Subclass members' uniform and standardized

*Reverse Mortgage Agreement* further prohibits Celink and RMF from adding unreasonable or inflated "attorneys' fees" in connection with any foreclosure litigation.

120.    Celink and RMF breached their HECM and reverse mortgage agreements with Plaintiffs and the New York Subclass, including *Conversion Loan Agreement* and Section 20 of the *Reverse Mortgage Agreement*, by adding false, inflated and unreasonable fees or costs often styled as "Payment for Attorney Fees / Costs" deriving from services billed by RRA for work allegedly performed by Enterprise Process Service, Inc., Paramount Land, Inc. and/or Threshold Land, Inc.

121.    Celink and RMF also breached their loan agreements with Plaintiffs and the New York Subclass, including the *Conversion Loan Agreement* and Sections 8 and 20 of the *Reverse Mortgage Agreement*, by adding false, inflated and unreasonable fees often styled as "Payment for Attorney Fees / Costs" deriving from services billed by RRA for work allegedly performed by Enterprise Process Service, Inc., Paramount Land, Inc. and/or Threshold Land, Inc.   HUD regulation §203.552 prohibits the imposition of any fee not authorized by HUD, and specifically prohibits any "[a]ttorney's and trustee's fees and expenses" that are not "actually incurred."   §203.552(a)(9). Further, §203.552(b) requires any fee imposed by the loan servicer or its agent to "be predicated upon *the actual cost of the work performed* including out of pocket expenses." (emphasis added).

122.    Plaintiffs and New York Subclass members have been injured and damaged as a direct and proximate result of Celink's and RMF's breaches of HECM and reverse mortgage loans by reason of the addition of false, inflated and unreasonable costs billed to Defendants, or any of them, by RRA and passed along to Plaintiffs and New York Subclass members.

123.    As a direct result of Celink's and RMF's breaches of contract, those Defendants imposed, collected and/or added "Payment for Attorney Fees / Costs" or similarly-described costs

and fees to the principal of Plaintiffs' and Subclass members' HECM and reverse mortgage loans, paid from the retained equity in their homes, or paid by Plaintiffs and Subclass members (or their estates), thereby causing actual harm and financial injury and damage to Plaintiffs and Subclass members.

124.    To remedy Celink's and RMF's breaches of contract, Plaintiffs and the New York Subclass seek damages, equitable remedies including an injunction and all other appropriate remedies.

125.    As it pertains to Plaintiff Dancy-Wilkins and Plaintiff Dancy-Wilkins as Power of Attorney for Flora Mayweathers individually, Celink, on behalf of RMF, retained RRA to sue them for foreclosure in the New York State courts.  The state court docket sheets confirm that "Enterprise Process Service" performed services for Defendants.  Celink and RMF breached their loan agreements with Plaintiffs by adding "Payment for Attorney Fee / Costs" fees to increase the balance of Plaintiff Dancy-Wilkins's and her mother's HECM and reverse mortgage loan, for false, inflated and unreasonable services billed by RRA alleged performed by RRA's or its principal's wholly-owned RRA companies.  Plaintiff Dancy-Wilkins and Plaintiff Dancy-Wilkins as Power of Attorney for Flora Mayweathers have been injured and damaged as a direct and proximate result, which injuries are continuing and increasing by reason of the addition of further inflated interest and mortgage insurance assessments.  Plaintiff Dancy-Wilkins and her mother were at all relevant times in compliance with and not in breach of their HECM loan agreements, or alternatively, Defendants elected their remedy to continue to perform under those loan agreements even after asserting a breach by Plaintiff Dancy-Wilkins and/or her mother.

### THIRD CAUSE OF ACTION

**BREACH OF DUTIES AND COVENANTS OF GOOD FAITH AND FAIR DEALING**

**(AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS AND THE CLASSES)**

126.   Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

127.   Plaintiffs and Class members are the borrowers or representatives of borrowers to HECM loan agreements.

128.   Celink and RMF are or were obligated to comply with the terms of those loan agreements as the lender, mortgagee, servicer, agent of the lender or servicer, successor to the lender, mortgagee or servicer or attorney-in-fact.

129.   Celink and RMF are or were in privity, or near privity, with Plaintiffs and Class members concerning the performance of obligations under the loan agreements.

130.   Celink and RMF each possessed discretion to interpret and apply the HECM and reverse mortgage loan agreements provided to Plaintiffs and Class members.

131.   Celink and RMF each owed Plaintiffs and Class members implied covenants and duties of good faith and fair dealing to not deprive them of the benefits of the HECM and reverse mortgage loan agreements, and not to apply their discretion over the agreements arbitrarily, irrationally, in bad faith, or in a manner that benefitted Celink and/or RMF and harmed Plaintiffs and Class members.  Celink and RMF each breached their implied covenants and duties of good faith and fair dealing by acting with bad faith and applying their discretion in a manner designed to harm Plaintiffs and Class members and to financially benefit Celink and/or RMF.

132.   As a result of its breaches of its implied duties and covenants of good faith and fair dealing, Celink and/or RMF imposed and/or collected fees, costs, penalties, charges, interest and

mortgage insurance that have been added to the principal of Plaintiffs' and Class members' HECM loans, paid from the retained equity in their homes, or paid by Plaintiffs and Class members (or their estates), thereby causing actual harm and financial injury and damage to Plaintiffs and Class members.

## FOURTH CAUSE OF ACTION

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §349

### (AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS AND QUALIFYING MEMBERS OF THE NEW YORK SUBCLASS)

133.    Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

134.    Plaintiffs and the members of the New York Subclass are "persons" within the meaning of GBL §349(h).

135.    GBL §349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

136.    Celink and RMF engaged in consumer-orientated, deceptive acts, policies, and practices in the form of misrepresentations and/or material omissions during the conduct of business in New York in violation of GBL §349(a) by engaging in the methods, acts, practices, and conduct described in this Complaint.   *See Shakespeare v. Compu-Link Corp. d/b/a Celink*, 848 Fed. App'x 474, 476 (2d Cir. 2021) ("Shakespeare has also satisfied 'the threshold test in that the acts [she] complain[s] of are consumer-oriented in the sense that they potentially affect similarly situated consumers.'") (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 125 (2d Cir. 2017).

137.    Celink and RMF engaged in deceptive acts, policies, and practices in the form of misrepresentations and/or material omissions during the conduct of business in New York in violation of GBL §349(a) by engaging in the methods, acts, practices, and conduct described in this Complaint, including the following:

    (a).    Deceptively and unlawfully charging appraisal fees to Plaintiffs and New York Subclass members after declaring their loans due and payable, in violation of 24 C.F.R. §206.125(b);

(b).    Deceptively and unlawfully charging foreclosure-related fees, costs and charges to Plaintiffs and New York Subclass members in violation of 24 C.F.R. §206.125(d), which prohibits the filing of any state foreclosure lawsuit *until after* the mortgagee, servicer and servicing agent comply with all State law requirements for filing a foreclosure lawsuit, including those provided in New York RPL §§280(2)(f) and 280-a(2)(m) and 3 N.Y.C.R.R. §79.9 (and as re-codified in 3 N.Y.C.R.R. §79.7);

(c).    Deceptively and unlawfully adding fees and charges to the HECM borrowers' loans in violation of 24 C.F.R. §203.552, which proscribes any fee or charge not listed in that regulation, and further proscribes any fee or charge imposed above "the actual cost of the work performed" or that are above the "reasonable and customary" amount, including but not limited to fees and charges termed "Payment for Property Inspection," "Payment for Property Appraisal," "Payment for Attorney Fees / Costs" and "Payment for Property Preservation" fees and charged added to Plaintiffs' and New York Subclass members' loans.

(d).    Deceptively and unlawfully charging adding charges and fees to Plaintiffs' and New York Subclass members' loans in violation of  24 C.F.R. §206.207, which prohibits the addition of unlawful and improper charges and fees to HECM borrowers' loan balances, including appraisal and inspection fees, unlawful filing, preparation and maintenance of foreclosure lawsuits without complying with pre-filing notice requirements and the imposition of attorneys' fees and costs containing false, inflated and unreasonable costs.

(e).    Deceptively and unlawfully filing foreclosure lawsuits against Plaintiffs and New York residents without having provided prior notice to either a third-party designated by the borrower or to the New York local or county office for the aging of its intent to

commence foreclosure proceedings, as required by New York RPL §§280(2)(f) and 280-a(2)(m);

(f).      Deceptively and unlawfully adding fees and charges to Plaintiffs' and New York Subclass members' loans in violation of New York RPL §280-b(4)(a), which requires all HECM lenders, servicers and subservicers to comply will all HUD rules and regulations;

(g).      Deceptively and unlawfully filing foreclosure lawsuits against Plaintiffs and New York Subclass members premised on defaults for the claimed failure to pay property taxes or property charges without having complied with nor completed the notice and cure procedures required by 3 N.Y.C.R.R. §79.9 9 (and as re-codified in 3 N.Y.C.R.R. §79.7);

*See Shakespeare v. Compu-Link Corp. d/b/a Celink*, 848 Fed. App'x 474, 476 (2d Cir. 2021) ("[W]e conclude that the complaint raised sufficiently plausible claims under Section 349 to survive the motion to dismiss and proceed to summary judgment.").

138.      Celink and RMF make further false and deceptive statements each time they send monthly mortgage statements to borrowers misrepresenting the amount owned by HECM and reverse mortgage borrowers, which amounts are inflated by improper fees, costs, charges, penalties, interest and mortgage insurance.  Defendants engage in further deceptive conduct to the extent those false debt amounts are communicated to third-parties, including credit bureaus.

139.      Celink and RMF make further false and deceptive statements each time they send monthly mortgage statements adding false, inflated, up-charged and unreasonable "Attorney fees / costs" to borrowers' HECM and reverse mortgage loans which fees and costs derived from fees and costs billed by RRA for work performed by it or its wholly-owned companies, which services were provided, if at all, at substantially-lesser cost than the fees and costs added to borrowers' loans.

140.    Celink's and RMF's conduct alleged in this Count is deceptive because those acts and practices are likely to mislead consumers, borrowers and the public by making them believe, falsely, that (i) monthly mortgage statements and other correspondence accurately represent the amount owed on HECM and reverse mortgage loans; and (ii) Defendants added only the actual and reasonable fees and costs billed by RRA to borrowers' HECM and reverse mortgage loans.

141.    Celink's and RMF's violations of GBL §349(a) have directly, foreseeably, and proximately caused damages and injury to Plaintiffs and the New York Subclass.  Celink's and RMF's violations of GBL §349 caused Plaintiffs' and New York Subclass members' injuries because absent their violations Plaintiffs and New York Subclass members would not have been charged the unlawful fees, costs, charges, penalties, increased interest and insurance premiums imposed on them (including their estates) and/or their reverse mortgages.

142.    In addition to their pecuniary losses, Plaintiffs and the New York Subclass suffered actual harm as a direct, foreseeable and proximate result of Celink's and RMF's violations of GBL §349(a), including but not limited to the annoyance, harassment, time, frustration, anger, and anxiety incurred by Plaintiffs and the New York Subclass.

143.    Plaintiffs and the New York Subclass are entitled to pursue claims against Celink and RMF for damages, statutory damages, treble damages, exemplary damages, injunctive relief, costs and attorneys' fees pursuant to GBL §349(h) to redress Celink's and RMF's violations of GBL §349(a).

144.    Plaintiffs and New York Subclass members who were sixty-five years of age or older at the time of Defendants' violations of GBL §349 are entitled to pursue additional claims and remedies pursuant to GBL §349-c to redress Celink's and RMF's violations of GBL §349(a) perpetrated against one or more elderly persons.

## FIFTH CAUSE OF ACTION

### UNJUST ENRICHMENT

### (AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS AND THE CLASS)

145.    Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

146.    Pursuant to FED. R. CIV. P. 8(d), claims for unjust enrichment are pleaded in the alternative to Plaintiffs' and the Classes' claims for breach of contract.

147.    Defendants have each violated the common laws of unjust enrichment in all the states of the United States and the District of Columbia.  *See Shakespeare v. Compu-Link Corp. d/b/a Celink*, 848 Fed. App'x 474, 476 (2d Cir. 2021).

148.    Defendants have benefited from the unlawful and inequitable acts alleged in this Complaint.

149.    Plaintiffs and Class members have conferred upon Defendants a traceable economic benefit resulting from the unlawful and inequitable acts alleged in this Complaint.

150.    The economic benefits derived by Defendants are a direct and proximate result of Defendants' unlawful and inequitable acts alleged in this Complaint.

151.    Defendants are not permitted to impose additional fees, costs principal, interest, and insurance premiums on Class members for the reasons and based on the circumstances alleged in this Complaint.

152.    Payments to Defendants resulting from inequitable and unlawful acts rightfully and equitably belong to Plaintiffs and Class members.

153.    Under the common law of all states and territories within the United States, it would be inequitable and unjust for Defendants to retain any portion of the charges, costs principal, interest

and insurance premiums resulting from Defendants' inequitable and unlawful acts.

154. Plaintiffs' and Class members' unintentional conferral of profits onto Defendants were brought about by Defendants' unlawful, unfair, deceptive, misleading and inequitable methods, acts and practices alleged in this Complaint.

155. Defendants should be compelled to provide restitution or to disgorge in a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds received from them.

156. A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendants traceable to Plaintiffs and Class members.

## SIXTH CAUSE OF ACTION

### VIOLATIONS OF NEW YORK REAL PROPERTY LAW §280-B

### (AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS AND QUALIFYING MEMBERS OF THE NEW YORK SUBCLASS)

157.    Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

158.    Plaintiffs' HECM loan is a "reverse mortgage loan" entitled to the protections and rights set forth in 280-b.

159.    New York RPL §280-b(4)(a) makes its unlawful for any reverse mortgage lender, servicer or subservicer to act in manner contrary to HUD rules and regulations pertaining to HECM loans.

160.    Celink and RMF violated RPL §280-b(4)(a) by adding fees, costs, charges, penalties, interest and mortgage insurance to Plaintiffs' and New York Subclass members' loans in violation of HUD rules and regulations, including of (i) 24 C.F.R. §206.125(b); (ii) 24 C.F.R. §206.125(d); (iii) 24 C.F.R. §203.552; and (iv) 24 C.F.R. §206.207.  Those unlawful adding fees, costs, charges, penalties, interest and mortgage insurance are repeated in each monthly statement sent by Celink and RMF to Plaintiffs, continuing to the present.

161.    Pursuant to New York RPL §280-b(8), Celink and RMF are liable to Plaintiffs and the New York Subclass for its violations of New York RPL §280-b.

162.    Beginning on the effective date of New York RPL §280-b, Plaintiff and the New York Subclass are entitled to pursue claims against Celink and RMF for damages, treble damages, injunctive relief, costs and attorneys' fees pursuant to New York RPL §280-b(8) to redress Celink's and RMF's violations of RPL §280-b.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

A.    An order certifying this case as a class action under FED. R. CIV. P. 23, and appointing Plaintiffs and their counsel to represent the Classes;

B.    An order declaring that Celink's and RMF's acts and practices constitute breaches of contract;

C.    An order declaring that Celink's and RMF's acts and practices constitute breaches and violations of the duties and covenants of good faith and fair dealing;

D.    An order declaring that Celink's and RMF's acts and practices constitute violations of New York GBL §349;

E.    An order declaring that Celink's and RMF's acts and practices constitute unjust enrichment;

E.    An order declaring that Celink's and RMF's acts and practices constitute violations of New York RPL §280-b;

F.    A permanent injunction;

G.    An order requiring restitution and disgorgement and the creation of a constructive trust for the benefit of Plaintiffs and the Classes;

H.    An order requiring Celink and/or RMF to refund, credit and/or remove all unlawfully-added fees, costs, charges, penalties, interest and mortgage insurance from Plaintiffs' and Class members' HECM and reverse mortgage loans.

I.    Pre-judgment and post-judgment interest to the fullest extent permitted by law;

J.      Attorneys' fees and costs required to reasonably investigate and prosecute this action; and

K.      All such other relief as this Court may deem just and proper.

## XI.    DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all claims to the extent authorized by law.

DATED:  October 14, 2022

**TUSA P.C.**

/s/ Joseph S. Tusa
Joseph S. Tusa
joseph.tusapc@gmail.com
P.O. Box 566
55000 Main Road, 2nd Floor
Southold, NY  11971
Tel. (631) 407-5100

**GISKAN SOLOTAROFF & ANDERSON LLP**
Oren Giskan
ogiskan@gslawny.com
Catherine E. Anderson
canderson@gslawny.com
90 Broad Street, 10th Floor
New York, NY  10004
Tel: (212) 847-8315

***Attorneys for Plaintiffs***
***and Proposed Class Counsel***

47